Judge Trimble,
delivered the following opinion the court: — Woods had judgment against Chism, in action of trover and conversion for a horse ; from which Chism appealed. A bill of exceptions states, that title to the horse in the declaration mentioned, was proved in the plaintiff; the defendant had purchased him of Chism May and the following instrument of writing was produced in evidence, to shew how Chism May came into possession of the horse.” The writing alluded to, is bond, with security, given by May to Woods, with con-' dition, which recites that May received the horse Moonrise of said Woods, to keep for him, in the state ol Kentucky, upon certain terms, and for certain ' ments, which were tobe divided between them, &c. ; and that if said May should pay over to Woods his part of the emoluments, and return the horse, &c. then the obligation to be void, &c. This bond was given in South-Carolina : all the parties-thereto, are recited to be of that state. The defendant, Chism, had purchased the horsé of May. Upon this, the court instructed the jury that, the said instrument of writing “ gave the said May no right to sell the said horse ; and that any sale made by him, could not bar the plaintiff of his right, even although the defendant had no knowledge of the manner or right by which said May held the horse ; or even had no reason to suppose he was the horse of another.”
The counsel for the defendant, conceiving the court had misdirected the jury, moved for a new trial, which' was overruled ; and the bill'of exceptions to the opinion QÍ the court in overruling the motion, was sealed and recorded.
The only question to be considered, is, whether the instruction of the court to the jury, was proper.
*532 The instrument produced and relied on, gave no authority or power to May to sell the horse ; but so taras it is entitled to consideration in the case, contains a necessary implication, that he should not sell. Discarding, then, the idea of power or authority expressly given, the case is plain and simple.
The general rule of the law, sanctioned by common sense, is, that no one can, by his sale, transfer to another, the right of ownership in a thing wherein he himself had not the right of property (a). No one can sellj a right, when he hath none to sell. To this general rule, the sales in markets overt, in England, form exceptions.
But if those local customs and regulations, ever obtained, or had force in this country, yet the sale, in this instance, bears no resemblance to those. Neither reason nor policy are consulted, in supposing, that where the right owner has parted only with a limited, qualified property ; a breach of trust should divest him, of the absolute and general property. Such a supposition can be bottomed only upon the eiToneous application of the rules and maxims of law and equity.
The maxim that “ he who trusts most, shall loose most,” is said to apply in favor of the purchaser. But-does not he who parts with a limited, qualified property, Or use of a specific thing, capable of identification and recaption, trust less than he who pays his money, in its kind undistinguishable, to the vendor, upon his affirmance or assurance, that the thing sold is his own ? It is a general rule, admitted, as settled by repeated decisions, that upon every sale of personal goods, by one who is in possession, there is a warranty by the vendor, that he hath title to the thing sold. This is either expressed, as in the bills of sale drawn according to form, or, implied bylaw ; and upon this warranty, the purchaser may have satisfaction of the vendor, if his title prove deficient. Now, if the bare possession of personal things shall be such conclusive evidence of property, as to protect the vendee, who purchased bona fide, unless the right owner can shew that his possession was divested mala fide, or by mere casually ; then, many legislative enactions, to prevent frauds upon purchasers of personal goods, were mere supererogations ; and the actions upon warranty of title to personal goods, so frequent in the books, could, only have been necessary, where a felony had been com- *533 knitted by some one, through whose hands the goods fiad passed ; or where, in reality, there had been a less and finding.
' We should expect to find it established as a rule, that the “ finding1'1 in a declaration in trover and conversion, was a substantial, instead of a formal allegation ; that in detinue, it would be a good plea, that the goods were neither casually lost by the plaintiff, nor stolen from him; or that the plaintiff should be nonsuit, if he could not make out the casualty by evidence ; and that in the action by the vendee against the vendor for defect of title, the declaration should aver that the possession of the y éndor was not bona fide, in addition to the allegation that the goods were the property of some other, at the time of sale.
Yet, we find, that in detinue, property in the plaintiff, gnd possession in the defendant, anterior to the suit (a) ; in trover, property in the plaintiff, and a conversion by the defendant; and in actions against the vendor, upon his warranty of the title, property in a stranger, and the sale to the plaintiff; is all that the law requires to be made out in evidence’.
Let the buyer, then, take care that he is not deceived by dealing for a pretended title ; or, that the vendor is, and will be, found responsible for the loss which may otherwise befall the vendee. But it has been said, that the maxim “ caveat emptorfi only applies to purchasers of real estates ; and thus, in the supreme court of Pennsylvania, in the case of Boyd vs. Bopst, 2 Dallas 91. But the maxim can only be restricted to that class of sales, when used by the vendor, against the vendee, to excuse himself from an action on an implied warranty, where there was none in the deed of conveyance ; then it applies in favor of the vendor, because the purchaser has the means within his own power, of examining the title. In this relative signification, it was used in the case just mentioned ; and the court proceed by saying “ the bare possession of personal goods,’ is a strong inducement to believe, that the possessor is the owner; and the bare act of selling, is such an affirmation of property, that, on that circumstance alone, if the fact should turn out otherwise, the value can be recovered from the seller.
Between strangers and the vendees of persoiv¿goodsf the maxim caveat emptorfi is properly applied to the *534 purchaser — Hartop vs. Hoare, Str. 1187 — Medina, vs. Stoughton, Ld. Raytn. 593.
How can it be material, in a question of general ow>. nership, whether a vendor of a pretended title, imposed upon the vendee by a possession,gained by bailment,, or otherwise ? If he was entrusted with the possession, only, without any authority to sell, the seller is acting, mail fide, from the time he proposes to sell ; and the-vendee, if he is acquainted with the nature of the trust, reposed, is acting also mala fide, in making the pur-, chase; but if he does not know the nature or extent of the trust, nor the manner nor circumstances under which the vendor has acquired possession,.the purcha-. ser is then acting upon the assurance given by the ven- . dor, either expressly or by implication, that the right of absolute ownership is in himself; or, if the assurance shall prove false, that he will be able to make good, the loss which shall be occasioned thereby.
In Medina vs. Stoughton, the declaration was hy the, vendee, against the vendor, upon the warranty of title ; the -defendant pleaded, that the tickets were, bought by him bonafide, before the sale, and that he sold, them bona fide-, the plaintiff.demurred ; and the chief justice, and the court, adjudged the plea ill*
Now it seems, that if a naked bailment to n vendor, would protect his vendee, the plaintiff in this case ought, to have replied specially, or have taken issue on die. plea. But the distinction between a pretended title, sold with possession mala fide, and possession bona fide*,. is not taken, in any adjudged case, where the plaintiff in. the action relies on his general right of dominion over, the thing.
Those who entertain the idea, that a bailee can, hy breach of trust, transfer the absolute ownership in the thing bailed to him, must give to the possession, of the thing, conclusive and incontrovertible evidence and. faith, as evidencing the right of ownership ; whereas, it, is but strong inducement or colour of title it is but, presumptive evidence, liable to be rebutted, and serves, as a protection against all except the right owner.
Upon the whole, we are clear that the owner of goods, may maintain trover against his bailee who may havq converted them to his own use ; or, at his election* iftay have an action against the vendee, for the goods them?; *535 eelvcs, or theirvalue, if detained or converted' (a) ; that a breach of trust* whether unknown or known to the Vendee, eannot change the right of property — (See the cases before cited — Cro. James 474 — Furnis vs. Leicester — Hartop vs. Hoare, as reported in-1 Wilson, p. 8⅛* 'Black. Com. 448-9).
■ The moral and social duties of every member of civilized society, require that it should be so ; otherwise, the Incenti ves to cautious and circumspect dealing, would be so far loosened, as to give those who are barely honest, and Only so according to municipal law, the advantage of ;those who are morally honest. Thus, the great security for personal property, would be sapped ; and a large portion of-good offices, and benevolences, Would he sup* planted-by the fear of having a loan, or other bailment of a personal thing, converted into an action for damages, instead of a return of the goods themselves.
Judgment affirmed.

(a) Bro. Trefp. p. 295, 6 Ejc. Ab. 577.

 1 Wath. 312.

 2 Dallas 54.